ON REHEARING
HERSEY, Judge.
Appellant, State of Florida, appeals a non-final order of the trial court, entered March 12, 1984, excluding physical evidence of a blood test and testimony concerning it. We reverse.
Appellee, Leroney Hills, was charged on December 13,1982, with two counts of first degree murder allegedly committed June 25, 1978. Two bloodstains found in the victim’s garage were tested in July 1978 by Richard Tanton, a serologist with the Palm Beach County Sheriff’s Department, who concluded in 1983 that appellee could have contributed to one of the stains. When appellee was charged almost four and one-half years after the murder, he filed a motion to exclude physical evidence of the bloodstains and testimony related to them, on the ground that his own serologist was unable to test the stains due to their age.
At the March 12, 1984, hearing on the motion, appellee orally amended the motion to add that Tanton had used up so much of the blood samples that appellee’s serologist could not conclusively test them. Tanton testified that he did not use an unusual *847 amount of the samples, and that he felt that enough was left to do an ABO analysis, which was all that was possible in any event because of the age of the samples. According to the testimony, certain enzymes in the blood deteriorate within the first year, but the ABO grouping could last from one year to seven or eight years.
James Pollock, Jr., a serologist with the Florida Department of Law Enforcement, tested the samples in December 1983 and was unable to conclusively determine the ABO blood type. He felt that enough blood remained after the state’s testing that, had he been able to test the bloodstains when they were fresh, he would have obtained results. Pollock said that he probably would have used as much of the samples, perhaps even more, than Tanton had, if he had tested the blood, but that he would have frozen the samples instead of keeping them at room temperature as appellant did, since freezing tends to double their lifespan.
Two issues are presented on appeal:
(1) As to that portion of the bloodstains consumed by the state’s testing, whether appellee was denied due process because it was unavailable for later testing by his own serologist, and
(2) As to the portion of the bloodstains which remained after the state’s testing, whether appellee was denied due process by the state’s delaying more than four years in charging him with the crime. Also relevant to this issue is whether the state had a duty to freeze the blood samples.
As to the first issue, in Johnson v. State, 249 So.2d 470 (Fla. 3d DCA 1971), cert. discharged, 280 So.2d 673 (Fla.1973) (a case the trial court found relevant and persuasive), appellant sought an opportunity to examine physical evidence in the form of a bullet from the gun with which he was allegedly armed. The fatal bullet had been lost after examination by the police ballistics expert. This court, in reversing appellant’s conviction, stated:
We think that appellant’s right to examine tangible evidence is a part of his right to the confrontation of witnesses against him and the right to a full and complete cross-examination of the witnesses who are to be presented against him. [citations omitted]. [T]he State may not by the simple statement that they have “lost the physical evidence” prevent the exercise of the right and then use the “lost evidence” against the defendant.
249 So.2d at 472. The Florida Supreme Court, in upholding the decision, said “respondent was effectively prevented from rebutting the State’s conclusions concerning the fatal bullet when the bullet disappeared before it could be examined by his ballistics expert.” 280 So.2d at 675. See also Stipp v. State, 371 So.2d 712 (Fla. 4th DCA 1979), cert. denied, 383 So.2d 1203 (Fla.1980) (held that appellant’s due process rights were violated where state’s chemist prevented appellant from having cocaine tested by using all 100 to 150 milligrams of cocaine in testing when he only needed 10 to 50 milligrams).
In contrast to cases such as Johnson, where the state intentionally or negligently lost or disposed of evidence, are those in which the evidence was unavoidably consumed during testing.
Thus, in State v. Herrera, 365 So.2d 399 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 459 (Fla.1979), appellee was arrested for possession of heroin. The heroin was “unavoidably consumed” when analyzed by the Dade County Public Safety Department. The trial court therefore ordered exclusion of the testimony of the state’s chemist and dismissed the Information. The appellate court reversed, saying:
The law is clear that the state’s intentional or negligent suppression of material evidence favorable to the defendant after a defense request for such evidence constitutes a denial of due process under our state and federal constitutions.... [HJowever, the weight of authority in the country is that the destruction of suspect contraband drugs unavoidably consumed during chemical testing by a state chemist does not constitute an act of suppres *848 sion of evidence by the state sufficient to trigger a due process violation.
365 So.2d at 401 (citations omitted). The court added that defendant would be entitled to cross-examine the state chemist and attack his credibility at trial.
In Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978), appellant was convicted of manslaughter by distributing heroin to the victim. The medical examiner performed toxicological tests on the victim’s body, but a portion of the original materials upon which the tests were performed was either consumed in the testing process or inadvertently discarded by the medical examiner’s staff. The appellate court, in affirming the trial court’s denial of appellant’s motion to suppress, distinguished Johnson based in part on the following: (1) the bullet in Johnson was not consumed in the testing process, nor did it deteriorate over a short term as the organic matter in Jones might; (2) preserving the single bullet in Johnson did not present the storage problems of preserving the organic matter in Jones; and (3) in Jones it was not the prosecutor’s office that lost the evidence, and the medical examiner made a reasonable effort to preserve as much of the evidence as possible.
Therefore, as to that portion of the bloodstains which was consumed during testing, the instant case is governed by Herrera and Jones, rather than Johnson, because the blood samples were not lost or negligently destroyed by the state, but rather were unavoidably consumed.
However, since a sufficient amount of blood remained after the state’s testing to permit independent testing by the appellee, it is the resolution of the second issue which will determine the result in this case.
Appellee contends that the state should have charged him with the crime (which occurred in June 1978) in June 1980 when it learned of his involvement through one James Burns. Had the blood samples been frozen and had he been charged at that time, he would have been able to test them. In fact, had they been frozen, they may have remained capable of being tested for up to eight years.
It is well established in Florida that when an accused asserts a due process violation based on preindictment delay, he must prove actual prejudice to himself and “if the threshold requirement of proof of actual prejudice is not met, the inquiry ends there.... ” Howell v. State, 418 So.2d 1164, 1170 (Fla. 1st DCA 1982). In order to show prejudice, general allegations that the evidence has been lost are insufficient. The accused must also “offer some explanation as to how [the lost evidence] would have been favorable and material.” Barber v. State, 438 So.2d 976, 978, n. 1 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 885 (Fla.1984) (citations omitted). See also Marrero v. State, 428 So.2d 304 (Fla. 2d DCA 1983); State v. Newman, 367 So.2d 251 (Fla. 4th DCA 1979). The appel-lee in the instant case never offered the requisite explanation. He thus failed to meet the threshold requirement of showing actual prejudice caused by the preaccusato-ry delay, and the trial court’s order should be reversed for that reason.
Although, in light of the above holding, it is not dispositive of the appeal, the state’s duty, or lack thereof, to freeze the blood samples should be addressed. It is our conclusion that, as a general rule, such a duty should be imposed.
In Budman v. State, 362 So.2d 1022, 1026 (Fla. 3d DCA 1978), the court noted that “a duty of preservation attaches in some form once the State has first gathered and taken possession of any discoverable matter. Otherwise, disclosure might be avoided by destroying vital matter before a defendant learns of its existence.”
In State v. Ritter, 448 So.2d 512 (Fla. 5th DCA 1984), the appellate court affirmed the dismissal of the unlawful possession count against defendant where the state negligently returned cocaine to D.E.A., rendering it unavailable for later testing by defendant. In doing so, the court expressed the opinion that “[i]t would be fundamentally unfair, as well as a violation of *849 rule 3.220, to allow the state to negligently dispose of critical evidence and then offer an expert witness whose testimony cannot be refuted by the defendant.” Id. at 514 (citations omitted). See also Stipp v. State, 371 So.2d 712 (Fla. 4th DCA 1979), cert. denied, 383 So.2d 1203 (Fla.1980). We fail to see any material difference between the destruction of evidence by the state’s affirmative act and its destruction by the state’s failure to act where it had a ready means of preserving the evidence with a minimum of inconvenience. We do not have here a situation such as that in State v. Lee, 422 So.2d 76 (Fla. 2d DCA 1982), where it was not shown to be scientifically possible to preserve a breath sample, or that in Jones v. State, 360 So.2d at 1293, where the material to be preserved consisted of a quantity of body tissue which presented storage problems due to its bulk.
“Where the destruction of evidence is unnecessary and is not an unavoidable result of the testing process, introduction of testimony concerning the evidence may violate a defendant’s due process rights.” State v. James, 404 So.2d 1181 (Fla. 2d DCA 1981). In light of the importance of those rights, the state’s failure to freeze the blood samples resulted in their unnecessary destruction. However, as set forth above, “to be entitled to relief, a defendant generally must show that the destruction of the evidence resulted in some demonstrable prejudice to him,” id. at 1182, which the appellee here failed to do.
The motion for rehearing is granted in part and denied in part. The order suppressing the physical evidence is reversed and this cause is remanded for further proceedings.
DOWNEY and DELL, JJ., concur.